IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| In re:<br><br>JOHN ALAN ROSS,<br><br>              Debtor. | Chapter 11<br><br>Case No. 5:20-BK-50129 |

**OBJECTION OF WILLIAM A. TRUBAN, JR. TO CONFIRMATION
OF AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

William A. Truban, Jr. ("Truban"), a creditor of the Debtor, John Alan Ross (the "Debtor"), by counsel, hereby objects to confirmation of the Debtor's proposed amended chapter 11 plan of reorganization docketed August 5, 2020 [Docket No. 99] (the "Plan"). The Plan was filed pursuant to subchapter V of chapter 11 of the United States Bankruptcy Code, 11 U.S.C. section 101 *et seq*. (the "Bankruptcy Code"). In support thereof, Truban respectfully states as follows:

1. Section 1191(a) of the Bankruptcy Code states that a plan under Subchapter V of chapter 11 shall be confirmed only if all of the requirements of section 1129(a), other than paragraph (15) of that section are met.

---

Augustus C. Epps, Jr., Esquire (VSB No. 13254)
Michael D. Mueller, Esquire (VSB No. 38216)
Jennifer M. McLemore, Esquire (VSB No. 47164)
Bennett T. W. Eastham, Esquire (VSB No. 93484)
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6000
Facsimile: (804) 420-6507
Email:   aepps@williamsmullen.com
           mmueller@williamsmullen.com
           beastham@williamsmullen.com
           jmclemore@williamsmullen.com

*Counsel for William A. Truban, Jr.*

2. To assist in making this determination, Bankruptcy Code section 1190(1)(c) requires that the proposed plan include "projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization." The Debtor has included no such projections in the Plan. For this reason alone, the Plan must not be confirmed.

3. In addition, the Plan cannot be confirmed because it does not satisfy the requirements of Section 1129(a)(11) or Section 1191(c) of the Bankruptcy Code.

4. Section 1129(a)(11) requires that the Bankruptcy Court find that a plan be feasible as a condition precedent to its confirmation. Specifically, the Bankruptcy Court must determine that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

5. Section 1191(c)(3) tightens the requirements of section 1129(a)(11) for subchapter V cases by adding to the feasibility requirement a requirement that the Court determine that the debtor will be able to make all payments under the plan or that there is a reasonable likelihood that the debtor will be able to make all payments under the plan. Bankruptcy Code section 1191(c)(3)(A). Section 1191(c)(3)(B) states that, should the court find only that there is a reasonable likelihood that the debtor will be able to make the payments for which the proposed plan calls, the plan must provide appropriate remedies to protect the holders of claims or interests if the debtor does not make the required plan payments.

6. The purpose of [the 1129] "feasibility" requirement is "to avoid confirmation of visionary schemes which promise creditors more under a proposed plan than the debtor can possibly attain after confirmation." *Matter of Pizza of Hawaii*, 761 F.2d 1374, 1382 (9th Cir. 1985). *See also Pookrum v. Bank of America, N.A.*, 512 B.R. 781 (D.Md. 2014) (same); *In re DeLuca,*

2

1996 WL 910908, at * 17 (Bankr. E.D. Va. April 12, 1996) ("[I]t is not necessary that success be guaranteed, but only that the plan presents a workable scheme of reorganization and operation from which there may be a reasonable expectation of success."); *In re Monnier Bros.,* 755 F.2d 1336, 1341 (8th Cir. 1985) ("[I]t is the responsibility of the court to examine the plan carefully to determine whether it is workable and has a reasonable prospect of succeeding.").

7.      In the Plan, the Debtor asserts that he is "employed as an independent contractor and consultant" for Race ADV, LLC ("Race ADV") and he is being paid and will be paid $5,000.00 per month in respect of his employment. He further asserts that Race ADV is owned, entirely, by Jake Ross – the Debtor's eighteen-year-old son – and that the Debtor has no ownership interest in or control of the entity. Plan, Article 1. (It is interesting to note that on Schedule J of the Debtor's Schedules [Docket No. 22] Ross lists his 18 year old son as his dependent even though this is the same son who is supposedly employing the Debtor.) Based on the documents provided to Truban pursuant to the 2004 Order entered in the Debtor's bankruptcy case, Race ADV appears not to have a signed operating agreement. Furthermore, many of the business receipts provided in response to the Rule 2004 request listed John Ross individually or Independence Farm, LLC and leading one to the inference that Race ADV may in fact be a "straw man" for the Debtor and other family members. In fact, in response to the Rule 2004 request, in the Race ADV Business Plan email it provides, in part, "*Jake originally planned to run the business part time and through the summer, but feels he will be better suited as an employee than an owner and wishes to sell the business to his father.*" It is far from clear how Debtor would have the funds to purchase this interest from Jake. Furthermore, should the Debtor actually have sufficient funds, these funds should be used to increase amounts payable to creditors under the Plan.

8. In Article V of the Plan, the Debtor asserts that his anticipated monthly income from Race ADV is $5,000. This is consistent with representations made by the Debtor in his Schedule I [Docket No. 22]. The Debtor proposes Plan payments in the amount of $750 per month for the first six months of the Plan, and $1,400 per month for the remaining 54 months of the Plan. Plan, Article V. The total proposed payout under the Plan is thus $80,100.

9. The Debtor's schedules indicate that his budget has monthly net income of only $196.00, which presumably is the maximum he could pay on a monthly basis toward his Plan obligations.

10. The Debtor's monthly operating reports do not support Debtor's projections in the Plan. The *Debtor-in-Possession Monthly Operating Report* (the "MOR") for the month of April, 2020 [Docket No. 56] shows income of only $1,479.84, and expenses in the amount of $1,518.06. In his May, 2020 MOR [Docket No. 75], the Debtor reports income in the amount of $2,429.75 (which includes his $1,200 COVID stimulus check) and expenses in the amount of $2,360.28 For June, 2020 the Debtor reports cash receipts of $1,400.00 and disbursements of $1,421.92. As of the date hereof, the Debtor has not filed a monthly operating report for July, 2020. Thus, based on his reported income and expenses, the Debtor has fallen far short of his Plan projections each month since April. There has yet to be a single calendar month in which Race ADV has paid the Debtor an amount anywhere close to what the Debtor asserts that he will be receiving during the life of the Plan. Indeed, his receipts from that company do not suffice even to pay the "rent" on his residence to Independence Farm, LLC, the entity that owns the Debtor's residence and of which the Debtor owns a 100% interest, plus his utilities and food, much less anything else.

11. As further evidence of his financial instability, this Court should note that the Debtor requested a forbearance for 90 days from his mortgage company, Wells Fargo [Docket No.

64]. If the Debtor cannot timely make his mortgage payments[1], it is difficult to see how he will be able to make his Plan payments.

    12.    Furthermore, in Article I of the Plan the Debtor states:

> The Debtor has a very strong reputation in the European motorcycle enthusiasts industry, and <u>anticipates</u> a growing and profitable enterprise with Race ADV, LLC. The debtor also <u>anticipates</u> increasing consulting opportunities in the motorcycle industry once the economy reopens and improves, and has applied for, and <u>has optimism about,</u> <u>a job</u> with a prominent motorcycle manufacturer that will blend a base salary and a commission. (Emphasis added).

There could hardly be a more perfect example of a plan proposing a "visionary scheme" rather than a "workable scheme of reorganization and operation from which there may be a reasonable expectation of success." *See Monnier, supra.*

    13.    In addition, the Debtor has significant administrative expenses that, according to the terms of the Plan and the Bankruptcy Code, must be paid to the extent allowed. *See* Plan, Article III. Debtor's counsel has filed his First Interim Application for Compensation and Reimbursement of Expenses and this Court has allowed interim compensation of $12,515.35 in fees and expenses for the time period of April 21, 2020 [*sic.*] through June 22, 2020. Counsel held a retainer in the amount of $4,525, which left an outstanding balance of approximately $8,000. The Subchapter V Trustee in this matter, William E. Callahan, Jr., also filed his First Interim Application for Compensation and Reimbursement of Expenses, and this Court allowed the Trustee interim compensation of $7,847.50 in fees and expenses for the time period February 27,

---

[1] The payments are actually made by the owner, Independence Farm, LLC, to which the Debtor pays monthly rent of $350.00 (*see* Debtor's Schedule I, Docket No. 22 at *32). Upon information and belief, this $350.00 per month payment is a reduced payment agreed to by the lender, Wells Fargo, as an accommodation to the Debtor, and, upon expiration of the accommodation period, the full monthly payments will again be payable. There is no financial information in or accompanying the Plan to indicate the Debtor's ability to make a monthly payment of such size from his projected monthly income of $5,000.00 and his estimated monthly net income of $196.00 (which takes into account the Debtor's payment to his wholly-owned LLC landlord of $350.00 per month). The full monthly payment, as set forth in Wells Fargo's proof of claim (Claim 6-1 filed on March 12, 2020) is $2,194.35.

2020 through June 24, 2020.  These fee allowances are now Class 1 Administrative Claims that, pursuant to the Plan, must be paid once allowed.  However, it is not clear from the Plan that the Debtor will be able to pay the approximately $16,000 in administrative claims given his current limited resources.  At the very least, even if the Debtor comes up with the funds to make the required payment of Administrative Claims, payment of these amounts will either (a) significantly weaken the Debtor's financial position, as set forth in his schedules and in his budget, thus making the $80,100 in payments the Plan proposes to be paid to creditors even more unlikely, or (b) reduce the payments to creditors by approximately 25%.  More requests for allowance of compensation will surely follow in this case.[2]

14.    Based on the foregoing, the Plan does not have a reasonable prospect of succeeding and simply is not feasible, and thus cannot be confirmed because it does not satisfy sections 1129(a)(11) and 1191 of the Bankruptcy Code.  In addition, the Plan offers no evidence to support a finding by this Court that the Debtor has provided appropriate remedies to protect the holders of claims or interests if the Debtor does not make the required plan payments, as section 1191(c)(3)(B) requires.  The Debtor does not have an employment history with Race ADV, which is itself a new business venture operated by an inexperienced person (and an insider – *see* section 101(31) of the Bankruptcy Code).  The Debtor has shown very little disposable income on his MORs and is facing nearly $16,000 in administrative claims (almost certainly to increase to at least $20,000 when compensation for services after late Juneand requested and allowed.  With no track record of disposable income in the amounts projected in the Plan, no source of funds for payment of administrative claims, and no financials submitted with respect to the Debtor's

---

[2] Because the Plan will not be a consensual plan, the Debtor will be permitted to amend the Plan to provide for payment of these administrative expenses through the Plan, thus causing either a greatly increased monthly payment from the Debtor or a significantly reduced payment to other creditors pursuant to the Plan.  *See* Bankruptcy Code section 1191(e).

employer, the Plan is not a "workable scheme of reorganization … from which there may be a reasonable expectation of success." *In re DeLuca*, 1996 WL 910908, at * 17 (Bankr. E.D. Va. Apr. 12, 1996). If the Debtor expects to make his plan payments out of another source of funds, such source must be disclosed to creditors and this Court.

15. Furthermore, the Debtor has not proposed this Plan in good faith, as Bankruptcy Code section 1129(a)(3) requires. The proposed treatment of Class 3, the William A. Truban, Jr. Secured Claim, makes it transparent that the Debtor's frantic attempt to limp to the confirmation finish line without the ability to perform his obligations under the Proposed Plan is simply an attempt to obtain a confirmation order that strips off the lien securing Truban's claim presently secured by the real property at 1021 Bowman's Mill Road, Middletown (pursuant to section 1190(3) of the Bankruptcy Code) before the inevitable failure of his Plan. Truban submits to this Court that when viewed in this light, and together with the lack of feasibility, the Plan smacks of bad faith violative of Bankruptcy Code section 1129(a)(3), and confirmation should be denied for this basis as well.

16. The failure of a plan to provide specific information "respecting how and when payments would be made to creditors can violate the "good faith" requirement of Bankruptcy Code sections 1129(a)(3). *See Crestar Bank v. Walker (In re Walker)*, 165 B.R. 994, 997 (E.D.Va. 1994), and it does so in this case.

17. In addition, because of the tremendous issues regarding feasibility of the Plan and in light of the serious inequities that would be imposed on the Class 3 claim holder should the Plan be confirmed and then the Debtor fail to make all payments required to be made pursuant to the Plan, any order of this Court confirming the Plan must provide that the provisions of section 1190(3) shall not apply to strip the lien from the Bowman's Mill Road property presently securing

Truban's class 3 claim until substantial consummation of the Plan.  In this regard this Court should note the provisions of section 1191(c)(3) of the Bankruptcy Code, which requires that this Court find either that "the debtor will be able to make all payments under the plan or that there is a reasonable likelihood that the debtor will be able to make all payments under the plan <u>and</u> the plan provides appropriate remedies … to protect the holders of claims or interests in the event that the payments are not made."  Truban submits that given the facts of this case the Plan cannot be confirmed unless this Court orders that the provisions of section 1190(3) not apply until all payments under the Plan have been made.[3]

      WHEREFORE, for the foregoing reasons, Truban requests that this Court enter an Order denying confirmation of the Amended Plan and granting such other and further relief as this Court may deem just and proper.

Dated:  August 31, 2020                     WILLIAM A. TRUBAN, JR.

                                            /s/ Augustus C. Epps, Jr.
                                            Augustus C. Epps, Jr., Esquire (VSB No. 13254)
                                            Michael D. Mueller, Esquire (VSB No. 38216)
                                            Jennifer M. McLemore, Esquire (VSB No. 47164)
                                            Bennett T. W. Eastham, Esquire (VSB No. 93484)
                                            Williams Mullen
                                            200 South 10th Street, Suite 1600
                                            Richmond, Virginia 23219
                                            Telephone: (804) 420-6000
                                            Facsimile: (804) 420-6507
                                            Email: aepps@williamsmullen.com
                                                           mmueller@williamsmullen.com
                                                           beastham@williamsmullen.com
                                                           jmclemore@williamsmullen.com

                                            *Counsel for William A. Truban, Jr.*

---

[3] As of the date hereof, counsel is aware of no cases construing the "appropriate remedies" provision of section 1191(c)(3).

## CERTIFICATE OF SERVICE

      I hereby certify that on the 31st day of August, 2020, I caused to be served the foregoing Objection of William A. Truban, Jr., to Confirmation of Amended Chapter 11 Plan of Reorganization via this Court's CM/ECF electronic case management system to the parties identified below and all parties entitled to notice thereby:

    Andrew S. Goldstein, Esquire
    Magee Goldstein Lasky & Sayers, P.C.
    Post Office Box 404
    Roanoke, VA  24003
     *Counsel for Debtor*

    William E. Callahan, Jr., Esquire
    Gentry Locke
    Post Office Box 40013
    Roanoke, VA  24022
     *Chapter 11 Trustee*

    United States Trustee
    Office of the United States Trustee
    210 First Street, Suite 505
    Roanoke, Virginia 24011
     *United States Trustee*

    Mary F. Balthasar Lake
    Shapiro & Brown, LLP
    501 Independence Parkway, Suite 203
    Chesapeake, Virginia 23320
     *Counsel for Wells Fargo Bank, N.A.*

          /s/ Augustus C. Epps, Jr.
          Augusts C. Epps, Jr.

43207831v9